## Commonwealth v. Association of Iron & Steel Engineers, Appellant.

584

Argued May 24, 1966. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Edward R. Lawrence,* with him *Paul, Lawrence & Rock,* for appellant.

*Edward T. Baker,* Deputy Attorney General, with him *Walter E. Alessandroni,* Attorney General, for Commonwealth, appellee.

OPINION BY MR. JUSTICE MUSMANNO, June 24, 1966:
The Association of Iron and Steel Engineers has appealed from an order of the Court of Common Pleas of Dauphin County denying its appeal from the assessment of Sales and Use Tax for the period March 7, 1956 to September 30, 1961, amounting to $3,850.06, including interest and penalties.

The tax was levied pursuant to the provisions of the Selective Sales and Use Tax Act of March 6, 1956, P. L. (1955) 1228, as amended, 72 P.S. §3403-1 et seq. Section 201(a) of the Act imposed a tax upon each separate sale at retail within the Commonwealth. Section 201(b) imposed a tax upon the use within the

Commonwealth of selected items of tangible personal property. Section 2(j) defined "Sale at Retail", in part, as "any transfer for a consideration of the ownership, custody or possession of tangible personal property". Among the definitions of "tangible personal property" in section 2 of the Act, the following appears as subsection 2(1)(18): "(18) Periodical and other publications, but not including publications which are published at regular intervals not exceeding three months, circulated among the general public and containing matters of general interest and reports of current events."

The appellant contended that its magazine, *Iron and Steel Engineer,* falls within the exception in subsection 2(1)(18) and that, therefore, its sale and use was not subject to the tax. The court below, in overruling this contention, thoroughly considered all the arguments advanced by the appellants and disposed of them in an excellent analytical opinion, a reference to which will resolve all ambiguities and controversy inherent in the litigation. Summarizing the lower court's decision it is to be noted that in order for a publication not to be subject to the tax, four cumulative conditions must be met: (1) the publication must be published at regular intervals, not exceeding three months; (2) it must be circulated among the general public; (3) must contain matters of general interest, and (4) must contain reports of current events.

*Iron and Steel Engineer* meets the first condition easily because it is published monthly, but it encounters an insurmountable barrier when it confronts the second condition for it is only too clear from the slightest glance at the formidable and highly technalized periodical that its circulation is restricted to a certain segment of the community comprised of those persons who derive their livelihood from the specific field of activity treated in the publication. Thus, the magazine

cannot be tax free under the statutory definition of taxable periodicals.

The Association contends that the test of circulation among the general public is diversity of subscribers and emphasizes that the subscribers to its magazine come from many walks of life in 44 States, the District of Columbia and many foreign countries, that they hold a large variety of positions with differing forms of compensation, that they form a cross-section of the general public and that while the magazine is not for sale on the newsstands, it may be purchased by anyone on special order.

The lower court agreed that the true test was diversity but held that it is not enough for the taxpayer merely to show that the purchasers and readers of the magazine come from various economic levels, that they are engaged in jobs of widely different description, or that they are scattered geographically.

The exemption requires that the magazine must circulate among the "general public." Webster's New International Dictionary defines "public" as "the general body of mankind, or of a nation, state, or community; the people, indefinitely." The Legislature, in drafting the statute, enlarged the scope of the word "public" by adding "general," which Webster defines as "of or pertaining to the whole of a body, society, organization, or the like." It is not apparent how the subscription list of Iron and Steel could possibly fill out the expansive circle drawn by the phrase "general public."

It is true that there are many magazines which direct their interests to a specific field, but yet circulate among the general public. For example, readers of hobbyists' magazines or fashion magazines, aside from their interest in the subject matter of those periodicals, come from such completely varied backgrounds that they may not be identified as belonging to any par-

ticular group. However, readers of a professional journal such as the *Iron and Steel Engineer* not only have an interest in common with regard to the subject matter of the publication, but they are composed primarily of occupationists who earn their living in the iron and steel world.

The appellants argue that the readers of this magazine occupy various positions in different industries and professions. This may be so, but those **readers**, whether they be college professors, purchasing agents, salesmen, or contractors are still bound together in a common cause, that of advancing the iron and steel industry. The college professor may be an instructor in the field covered by *Iron and Steel Engineer;* the purchasing agent may be a purchaser of iron and steel products; the salesman may be a seller of iron and steel products; the contractor may be required to work with iron and steel and products comprised thereof, and so on. Therefore, the readers of *Iron and Steel Engineer* have something more in common than a mere interest in the subject matter, such as in the case of readers of hobby and fashion magazines. The readers of the periodical here involved, by reason of the very specialized and professional nature of the contents thereof, are concerned with the production and application of iron and steel and iron and steel products as an incident to the work in which they are engaged, though they do not all perform the same kind of work, occupy the same station in life, or earn the same income.

Since the periodical did not meet the requirement of circulation among the general public, it was not necessary to decide whether it could hurdle the formidable barriers of "general interest," and "reports of current events."

Thus the sale and use of *Iron and Steel Engineer* was properly taxed under the Pennsylvania Sales and Use Tax Act.

**Judgment affirmed.**