623 A.2d 418

**BOARD OF REVISION OF TAXES OF the CITY OF PHILADELPHIA and The City of Philadelphia and The School District of Philadelphia, Appellants,**

**v.**

**AMERICAN BOARD OF INTERNAL MEDICINE, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Feb. 2, 1993.

Decided March 12, 1993.

Alice Beck, for appellants.

Robert McL. Boote, for appellee.

Before PALLADINO and PELLEGRINI, JJ., and WRIGHT, Senior Judge.

PELLEGRINI, Judge.

The City of Philadelphia, the School District of Philadelphia, and the Board of Revision of Taxes of the City of Philadelphia (collectively, the Board) appeal from an order of the Court of Common Pleas of Philadelphia County, granting the American Board of Internal Medicine (ABIM) a real estate tax exemption for tax year 1989.

The ABIM is an Iowa non-profit corporation whose primary purpose is to provide standards for graduate medical education in internal medicine throughout the United States. The ABIM also monitors the performance of internal medicine residency programs, provides direct educational research and evaluative assistance to the faculty and trainees of the programs via pamphlets and booklets it publishes, provides a final examination for those studying in the programs for purposes of certification, and provides examinations for recertification. The ABIM charges all internists a non-waivable fee of approximately $600 to sit for the certification or recertification exam, which is the primary source of the ABIM's income. According to the ABIM's financial statements for tax year ending 1989, it had excess revenues over expenses totalling $1,667,889, and total cash reserves in the amount of $13,959,898.

The ABIM owns condominium office space located at 3624 Market Street in Philadelphia, Pennsylvania, at which it per-

forms its activities. In 1988, the ABIM's Market Street property was assessed at $301,245 for tax year 1989. As a result of that assessment, the City of Philadelphia sent the ABIM a bill for real estate taxes in the amount of $47,385.84. The ABIM applied with the Board for exemption from paying those real estate taxes on the basis that it was a purely public charity. The Board denied the ABIM's application, finding that it was not a purely public charity. The ABIM filed a *de novo* appeal from the Board's decision with the Court of Common Pleas of Philadelphia County. The trial court sustained the ABIM's appeal, finding that it qualified as a purely public charity, and the Board filed this appeal.

Whether an institution of learning may claim exemption from taxation on the basis of being an institution of purely public charity is based upon the enabling language found in the Pennsylvania Constitution and the subsequent adoption of a statutory exemption for charitable institutions. Article VIII, Section 2(a)(v) of the Pennsylvania Constitution provides:

(a) The General Assembly *may* by law exempt from taxation:

(v) Institutions of purely public charity, but in the case of any real property tax exemptions, only that portion of real property of such institution which is actually and regularly used for the purposes of the institution. (Emphasis added.)

■ Under that authority, the Pennsylvania General Assembly enacted Section 204(a)(3) of the General County Assessment Law (Law), Act of May 22, 1933, P.L. 853, *as amended*, 72 P.S. § 5020–204(a)(3), conferring a real estate tax exemption on:

All hospitals, universities, colleges, seminaries, academies, associations and *institutions of learning*, benevolence, or charity, ... *founded, endowed, and maintained by public or private charity:* Provided, that the entire revenue derived by the same be applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purpose.... (Emphasis added.)

Under Section 204(a)(3) of the Law, an entity claiming a real estate tax exemption must affirmatively show that the entire institution is (1) one of purely public charity; (2) was founded by public or private charity; and (3) is maintained by public or private charity. *Appeal of the Woods Schools*, 406 Pa. 579, 178 A.2d 600 (1962).

To determine whether an institution met these mandates, our Supreme Court in *Hospital Utilization Project v. Commonwealth of Pennsylvania*, 507 Pa. 1, 487 A.2d 1306 (1985), concluded that an institution would qualify as a purely public charity if it possessed the following characteristics:

(a) Advances a charitable purpose;

(b) Donates or renders gratuitously a substantial portion of its services;

(c) Benefits a substantial and indefinite class of persons who are legitimate subjects of charity;

(d) Relieves the government of some of its burden; and

(e) Operates entirely free from private profit motive.

*See also G.D.L. Plaza Corporation v. Council Rock School District*, 515 Pa. 54, 526 A.2d 1173 (1987).

Any entity claiming to be a purely public charity has the burden of proving that its operation satisfies all five of the criteria set forth in *Hospital Utilization Project* for tax exemption purposes. *In re Appeal of the Bethlen Home of the Hungarian Reformed Federation of America*, 125 Pa.Commonwealth Ct. 315, 557 A.2d 828 (1989). Whether an institution is entitled to a real estate tax exemption is a mixed question of law and fact, and each case must be decided on its own unique fact pattern. *In re Appeal of Marple Newtown School District v. The Devereux Foundation*, 39 Pa.Commonwealth Ct. 326, 395 A.2d 1023 (1978). The statutory provision exempting property as a charitable institution from taxation is subject to strict construction in favor of the taxing authority. *Four Freedoms House of Philadelphia, Inc. v. The City of Philadelphia*, 443 Pa. 215, 279 A.2d 155 (1971).

The Board contends that the ABIM did not meet its burden of proving that it was a purely public charity entitled

to a real estate tax exemption for tax year 1989 because it failed to meet some of the criteria set forth in *Hospital Utilization Project.*[1] Specifically, the Board argues that the ABIM does not advance a charitable purpose, benefit an indefinite class of persons who are legitimate subjects of charity, or donate a substantial portion of its services. The Board points out that the programs, training, certification and recertification exams provided by the ABIM are not for the benefit of the public, but rather, are for the sole benefit of the internists who are not objects of charity. The Board further adds that the internists are required to pay a non-waivable fee for the privilege of taking the certification examination and are not required to provide the public with any free service as a result of their certification.

The ABIM does not dispute the fact that doctors seeking professional advancement by specializing in internal medicine are not legitimate objects of charity, that the doctors must pay a non-waivable fee to sit for the examination, and that certified internists are not required to provide free medical service to society. However, the ABIM argues that contrary to what the Board believes, the public *is* the recipient of the benefits which the internists accrue from its programs and certification exams because as a result of the activities it provides, the public receives improved medical care.

In support of this contention, the ABIM relies on our Supreme Court's decision in *American Society for Testing and Materials v. Board of Revision of Taxes (Philadelphia County),* (ASTM) 423 Pa. 530, 225 A.2d 557 (1967). In *ASTM,* our Supreme Court held that even though the ASTM's primary purpose was to promote knowledge of the materials of engineering and methods testing to industry, the public was actually the primary beneficiary, because whatever gain accrued to the industry, eventually accrued to the benefit of the public as well. However, in *ASTM,* one of the ASTM's achieved objectives was to provide free library use, lectures and knowledge for all people in that area. In this case, the

---

1. The Board has conceded that the ABIM operates free from profit motive.

ABIM concedes that it does not require the certified internists to provide free medical care to the public, (Reproduced Record at 201a) and the only free information which the public receives from the ABIM is a pamphlet it publishes called "What's So Special About Your Internist." (Reproduced Record at 199a.)

Not only is this case different than *ASTM* because the ASTM provided for free a substantial amount of direct public benefit, but we believe that any reliance by the Supreme Court on an indirect public benefit is no longer valid as a result of the criteria established in its subsequent decisions in *Hospital Utilization Project, G.D.L. Plaza Corporation* and their progeny. We have followed those decisions in holding that the institution's charitable activity must directly benefit the "object" of the charity, and that "indirect" benefits to the public are not considered charitable.

In *Biosciences Information Service v. Commonwealth of Pennsylvania,* (BIOSIS) 101 Pa.Commonwealth Ct. 384, 516 A.2d 434 (1986), we determined that BIOSIS, whose purpose was to advance knowledge of theoretical and applied biology through research and publications, was not a purely public charity because it did not benefit the public at large. While BIOSIS also held free seminars to educate the public regarding the availability and use of its reference data in the field of biological science, BIOSIS' primary beneficiaries were "various organizations who subscribe (for a fee) to BIOSIS' periodicals and request searches of its library. These organizations include agencies of the United States government, universities and hospitals. Universities and research laboratories are administrative entities and not legitimate objects of charity." 101 Pa.Commonwealth Ct. at 389, 516 A.2d at 436. On reargument before a court *en banc, Biosciences Information Service v. Commonwealth of Pennsylvania,* 122 Pa.Commonwealth Ct. 294, 551 A.2d 672 (1988), affirmed (per curiam), 524 Pa. 132, 569 A.2d 927 (1990), we affirmed our previous decision, further noting that, "Although the public may benefit secondarily from BIOSIS' services, we conclude that BIOSIS'

purpose is not charitable in nature." 122 Pa.Commonwealth Ct. at 300, 551 A.2d at 675.

Similarly, in *PICPA Foundation for Education and Research v. Commonwealth of Pennsylvania,* (PICPA) 143 Pa.Commonwealth Ct. 291, 598 A.2d 1078 (1991), we determined that the PICPA Foundation (a foundation for the Pennsylvania Institute of Certified Public Accountants) did not qualify as a purely public charity for exemption from a sales tax because its primary purpose was to educate members of the accounting profession regarding subjects specific to that profession. Although the PICPA Foundation argued that it educated the public because its seminars were open to anyone interested, regardless of their profession or affiliation with PICPA, we determined that the foundation's activities primarily were for the benefit of those individuals who had an occupational interest in accounting subjects, and any education of the public was only incidental to that purpose. As such, its activities did not benefit an indefinite number of people.

■ Relying on our decisions in *BIOSIS* and *PICPA,* we believe that the internists are the beneficiaries of the ABIM's activities. The sole purpose of the ABIM's activities is to give the internists additional credentials needed to practice medicine in their chosen area, not to provide medical care to segments of society who are legitimate objects of charity. While we agree that certifying doctors with the expectation that they will ultimately provide the public with better medical care is a commendable goal, we have already determined that a laudable motive is not sufficient to grant a learning institution an exemption from taxation. *Scripture Union v. Deitch,* 132 Pa.Commonwealth Ct. 134, 572 A.2d 51 (1990). Consequently, the ABIM has not proven that its activities advance a charitable purpose, are for the benefit of the public, or that it donates a substantial portion of its services.[2]

2. The Board also contends, and we agree, that the ABIM does not relieve the government of some of its burden. Although the ABIM argues that the government would be forced to provide the services which it provides if the ABIM was unable to do so, the government does not require the certification of doctors who are specializing in an area of medicine. The government only requires that doctors practicing

Because the ABIM has not met all of the criteria set forth in *Hospital Utilization Project*, it has not proven that it is a purely public charity entitled to a real estate tax exemption for tax year 1989.[3]  Accordingly, the decision of the trial court is reversed.

### ORDER

AND NOW, this 12th day of March, 1993, the order of the Court of Common Pleas of Philadelphia County, dated February 13, 1991, No. 5807, is reversed.

medicine be licensed by the state in which they practice.  In this case, all of the internists who are receiving certification in the specialized area of internal medicine are already practicing, licensed physicians.

3.  Although the Board did not raise the issue that the ABIM also failed to prove that it was funded by public or private charity or maintained by public or private charity pursuant to our holding in *Appeal of the Woods Schools,* we need not reach that issue because we have determined that ABIM did not prove it was a purely public charity.